(29 Misc. Rep. 187.)

### KESSLER v. FRIEDE et al.

(Supreme Court, Special Term, New York County. October, 1899.)

1. WILLS—SUSPENSION OF POWER OF ALIENATION.

A testator devised all his property to his widow for life, and the residue, in part, to two of his children in fee, and certain other property in trust until the oldest child of one of his sons should arrive at the age of 30 years. The will also provided that, when the oldest child of his son should have arrived at such age, the trustee should sell the trust property, and divide the proceeds into as many shares as there were children of his deceased son living at time of his (testator's) death, and pay one share to each child who should have become 30 years of age, and invest the share of those under 30 years of age for their benefit, to be paid to them on their reaching such age. The will also provided that, if any of his deceased son's children should die leaving issue him surviving, then such issue should be entitled to, and become vested with, the share of such deceased parent. *Held*, that the will was not void, as suspending the power of alienation, as to the trust property, for more than two lives in being.

2. SAME—TRUST—TERMINATION.

On the death of the oldest child of his son before he arrived at the age of 30 years, the trust terminated, and the direction to sell the trust property became operative, as though the oldest son had arrived at the age of 30 years.

3. SAME—TITLE—TIME OF VESTING.

The children of the deceased son took a vested interest on the death of testator, and, on the death of a child of testator's son without issue, his share passed to his personal representative.

4. CONVERSION—PERSONALTY.

Where a will directs the conversion of real property into cash by sale, and division of the proceeds between certain individuals, the share of each must be regarded as personalty.

5. WILLS—RENTS AND PROFITS.

Where a testator gave his widow a life estate in his property, and devised the residue to another in trust, with directions to sell on the happening of a certain contingency, and distribute the proceeds to the cestuis que trustent, the latter, on the happening of the contingency, are entitled to the rents and profits which have accrued since the death of the life tenant.

Action for the construction of a will by Charles Kessler against Dora Friede and others. Directions given.

William H. Osborne, for plaintiff.

Warren W. Foster, guardian ad litem, for Gustave Kessler and William Kessler.

Thomas W. McKnight, for Bertha Kessler Boswald.

Edwin F. Stern, for Frederick Kessler.

Alfred B. Cruikshank, for Dora Friede.

George T. Hanning, for Gustave Friede.

Frank Schaeffler, for defendants Frank C. Schaeffler, as executor, etc., and Kate Schaeffler.

BEEKMAN, J. Robert Kessler died in the year 1893, leaving a last will and testament, in and by which, after directing the payment of his debts and funeral expenses, he devised and bequeathed all of his estate, real and personal, to his wife, Catherine, "for and during the term of her natural life." Under the third and

succeeding clause of his will, he devised and bequeathed all the rest, residue, and remainder of his estate, real and personal, as follows: To his daughter, Dora Friede, certain chattels, and also four lots of land, which he describes, in fee; to his son Frederick two other lots of land in fee; and to his executrix three other lots of land in trust, to take possession of the same, and to collect and receive the rents, issues, and profits thereof, until, to use the language of the testator, "the oldest child of my deceased son, Robert Kessler, shall have arrived at the age of 30 years." After providing for the payment, out of the income, of the expenses of administering the trust, the testator directs the trustee to apply so much of the balance to the care, maintenance, and education of such of the children of his son Robert as may be minors, but during their minority only, as the trustee, in her discretion, may deem necessary and proper, and then to divide any balance then remaining into as many shares or parts as his said son Robert had children living at the time of his (testator's) decease, allowing, also, one share for Bertha, the widow of said Robert, and to pay one share to said Bertha, and also one share to each of Robert's children. Immediately following this is a provision which I quote:

"And in further trust, as soon as the oldest child of my deceased son, Robert, shall arrive at the age of 30 years, that my said executrix sell and convey the said trust property, and I hereby authorize, empower, and direct my said executrix to sell and convey the said trust property, at public or private sale, at such time or times, and upon such terms, as my said executrix shall deem most advantageous, and make, execute, and deliver to the purchaser or purchasers thereof good and sufficient conveyances in the law for the same; also, in further trust, that my executrix divide the proceeds of sale (whenever sale shall be made) into as many shares or parts as my son Robert shall have children living at the time of my decease, and to pay one of said shares to each child who may have arrived at the age of 30 years, and that my said executrix invest the remaining shares of such proceeds of sale, one for each child under the age of 30 years, at interest, and keep the same so invested until each child shall arrive at the age of 30 years, when the share so invested for him or her, together with any accumulations of interest, shall be paid over by my executrix. And in further trust that my said executrix is hereby authorized, in her discretion, to apply the interest accruing on such investments for the benefit of the respective cestui que trusts, during their minority, and also that she may pay such interest to the respective cestui que trusts after they shall respectively arrive at the age of 21 years."

The fourth paragraph of the will is as follows:

"Fourth. It is my will, and I hereby direct, that, in case any of the children of my deceased son Robert shall depart this life leaving issue surviving, then such issue shall be entitled to, and become vested with, the share, interest, or portion of, in, and to the trust estate, and my residuary estate, his or their parent would be entitled to, or would have received, if such parent had lived."

The fifth clause contains a general bequest and devise of the rest, residue, and remainder of his estate, if any, in equal shares to his two children, Dora and Frederick, and the children of his deceased son, Robert, the latter taking together a single share.

His daughter, Dora Friede, was appointed sole executrix of the will. The testator left, him surviving, his widow, Catherine, who died on the 18th day of January, 1898, his daughter, Dora, and his son, Frederick, and four grandchildren, sons of testator's deceased

son, Robert, namely, Robert Kessler, who was born on August 22, 1871, and who was the eldest, Charles Kessler, Gustave Kessler, and William Kessler. On the 27th day of June, 1895, Robert, being then about 24 years of age, died, unmarried and without issue, and this action is now brought for the purpose of obtaining a construction of the will above referred to. The main question submitted for solution is whether the provisions affecting the property devised to the executrix in trust involve an undue suspension of alienation, in violation of the statute in that regard.

I am quite satisfied that such is not the case. In the first place, the life of testator's wife is not a measuring life, and is not to be considered. Her interest in the property was a legal estate for life, and was at all times alienable, at her pleasure. Being of such a character, there could be no suspension of alienation wrought in any way by reason of this provision in her favor. Bailey v. Bailey, 97 N. Y. 460; Bird v. Pickford, 141 N. Y. 18, 35 N. E. 938; Corse v. Chapman, 153 N. Y. 466, 47 N. E. 812; Jessup v. Pringle Memorial Home, 27 Misc. Rep. 427, 59 N. Y. Supp. 207. The effect of the provision undoubtedly was to postpone the enjoyment of the actual possession of the property by the trustee so long as the life estate continued, but this did not affect the vesting of the trust estate in the trustee, which took place immediately upon the death of the testator, and the duration of the trust and the suspension of alienation which was affected by the will are measured by other lives than that of the life tenant. The precise question here involved has been so thoroughly discussed in the cases above cited, and the principle which I have stated so firmly established, that it is quite unnecessary to indulge in any further review of the subject.

The trust which was created for the benefit of the children of testator's deceased son, Robert, did involve a suspension of the alienation of the property during the period for which it was to continue, namely, until the oldest child of testator's deceased son, Robert, should have arrived at the age of 30 years, assuming that he lived to reach that age. It is a well-settled and familiar proposition that such a trust is valid, as its duration cannot exceed the limit of a life; for, if the cestui que vie dies before attaining the prescribed age, the trust terminates with his decease. This is exactly what took place in the case at bar. The eldest son of Robert did die before reaching the age of 30 years, and the trust which was dependent upon his life immediately came to an end, and the occasion arose for the sale and distribution of the corpus of the estate. The lives of the beneficiaries of the trust (other than Robert's eldest son) are in no sense measuring lives, and in nowise affected the duration of the trust. Bailey v. Bailey, 97 N. Y. 460.

It has been suggested that because the will provides that, as soon as the oldest child of testator's deceased son, Robert, "shall arrive at the age of 30 years," the property shall be sold, and the proceeds distributed among those entitled to the remainder of the estate, no such sale can take place until the actual lapse of time which would have completed that age had such oldest child lived

until then. Such a claim is quite unsound. Obviously, what the testator intended was that the directions to sell and distribute were to take effect and be consummated immediately upon the falling in and termination of the preceding particular estate. The words which he uses in giving the direction to sell are the same as those employed by him in specifying the limit of the trust estate, and are to be given the same meaning, and, as the law construes the language used in limiting the trust to mean that it is to continue until Robert's oldest child attains the age of 30 years, or until his death, should he die before that event, the use of the same phrase with respect to the conversion and distribution of the property carries with it the same meaning. In a word, the testator, in directing that the property should be sold as soon as the oldest child of his deceased son Robert should arrive at the age of 30 years, meant that, upon the termination of the trust, such should be the immediate disposition of the trust property. Any other construction would be quite too strained and unnatural to admit of acceptance. In any event, it is the duty of the court, as between two possible constructions, to adopt the one which will support, rather than impair, the validity of the will. But I am not here confronted with the necessity of such a choice, as the general scheme of the will indicates with sufficient clearness that the construction which I have given is plainly in accord with the actual intention of the testator. The direction to sell is a valid one, and should now be exercised.

The only other measuring lives affecting the alienability of the property are those of the distributees of the proceeds of the sale of the property who shall not have attained the age of 30 years. The share of each of such persons is directed to be held in trust until he attains that age, when it is to be paid over to him, the income in the meanwhile to be applied to his use. As to each share so situated, it is manifest that there can be no suspension of alienation in excess of two lives, namely, that of Robert's eldest son and that of the child for whose benefit such share is set apart; and, as to the shares of those who may have attained the age of 30 years, the suspension of alienation is measured by the single life of Robert's eldest son.

As has been said, the life of the widow in no way contributed to the suspension of alienation. Her estate was absolutely alienable at any time, and it was competent for her at any time to unite with others capable of conveying their interests in the extinguishment of her life estate. Thus, in no event could the suspension of the power to alienate transcend the prescribed limit.

It becomes necessary now to consider whether the interests of the children of Robert were vested at the time of testator's death. I am mindful of the general rule that, where the interest of legatees or devisees is derivable only under a direction to pay, convey, or divide, futurity attaches to the substance of the gift, and those only who are in being at the time appointed for the transfer are entitled to take. But it is not an inflexible rule, and always yields to evidence of a contrary intention on the part of the testator, as

that may be discoverable upon a consideration of the will as a whole. Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811. I am satisfied in the case at bar that the will discloses an intention to vest the interests of the distributees from the date of testator's death. It will be observed that, in providing for the distribution of the proceeds of sale of the trust property, the testator directs the same to be divided into as many shares or parts as his son Robert should have children living at the time of his (testator's) death, and to each of them an equal share of such proceeds is allotted. They, and not such of them as may be living at the time of distribution, are declared to be the objects of his bounty. There are no substitutionary provisions for the benefit of others should any of such children die after the testator, and the unqualified direction for a division of the property into as many shares as there were children of Robert living at testator's decease forbids the idea that he intended that those only who were in being at the time appointed for distribution should take the entire proceeds. It is true that under the fourth clause of the will it is provided, as we have seen, that, if any of the children of Robert should die leaving issue surviving, such issue should be "entitled to, and become vested with, the share, interest, or portion of, in, and to the trust estate, and my [his] residuary estate, his or their parent would be entitled to or would have received, if such parent had lived." But it is plain that this refers to a death before that of the testator, and this construction is much reinforced by the rule that, in the absence of evidence in the will of a different intention, such a provision will be presumed to relate to a death before, rather than after, the testator. This rests upon the established principle that the court will always lean to a construction which will vest an estate or interest at the earliest possible moment. The direction to pay the shares of those of the children who were minors upon their attaining 30 years of age did not qualify the vested character of their interests in the principal. If there were no other reason, the rule would prevail that where the gift is severed instanter from the general estate, and is directed to be held by the trustee for a specified time for the benefit of the legatee, and then to be paid over to him, the interest, in the meantime, to be applied to his use, this is indicative of an intent on the part of the testator that the legatee shall, at all events, have the principal, and is to wait only for the payment until the day fixed. Warner v. Durant, 76 N. Y. 133; Smith v. Edwards, 88 N. Y. 92, 105; Vanderpoel v. Loew, 112 N. Y. 167, 181, 19 N. E. 481.

I am satisfied, upon a consideration of the whole will, that the shares which these children were to take were intended to be and were vested interests upon the death of the testator. The whole scheme of the will shows a steadfast intention on his part that, in any event, they were to be the objects of his bounty. Upon this construction, the share of Robert's eldest son upon his decease passed to his personal representatives. As the will directed the conversion out and out of the property, and apportioned the proceeds only among the children of Robert, their shares must be

regarded as personal property, and be dealt with accordingly. The
rents and profits which have accrued since the death of the widow
of testator belong to those entitled under the will to receive the
proceeds of the sale of the property. With respect to the payment
to the executrix by Frederick Kessler of the sum of $5,000, as di-
rected in the will, and any other matters upon which the direction
of the court may be desired, I will hear the parties on the settle-
ment of the decision and judgment.

Ordered accordingly.